# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Wendy Howell, Mary Overton, Jennifer Stehr, Jennifer Kraushaar, Michelle Magle, Cari Van Natta, and Nicole Gingras, | Court File No. 22-cv-01713___ |
| *Plaintiffs*, | **COMPLAINT** |
| *vs* | **JURY TRIAL DEMANDED** |
| The Mayo Clinic, a Minnesota non-profit corporation, Mayo Foundation for Medical Education & Research, a Minnesota non-profit corporation, Mayo Clinic Arizona, an Arizona non-profit corporation; and Mayo Clinic Health System-Eau Claire, a Wisconsin non-stock corporation, | |
| *Defendants*. | |

Plaintiffs Wendy Howell ("Plaintiff Howell"), Mary Overton ("Plaintiff Overton"), Jen Stehr ("Plaintiff Stehr"), Jennifer Kraushaar ("Plaintiff Krauschaar"), Michelle Magle ("Plaintiff Magle"), Carie Van Natta ("Plaintiff Van Natta"), and Nicole Gingras ("Plaintiff Gingras"), (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendants The Mayo Clinic ("Defendant Mayo"), the Mayo Foundation for Medical Education & Research ("Defendant Mayo Foundation"); Mayo Clinic Arizona (Defendant Mayo Arizona") and Mayo Clinic Health System-Eau Claire ("Defendant Mayo Eau Claire") (all Defendants collectively "Defendants").

## INTRODUCTION

1.       In October, 2021, Defendant Mayo mandated that all its employees, including employees of its related corporations Defendant Mayo Foundation, Defendant Mayo Arizona and Defendant Mayo Eau Claire, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendants' employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for a religious exemption with their respective employer Defendants to be exempt from taking the Covid-19 vaccination.  Defendants denied the requested religious exemptions.  In addition, Defendants failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating religious exemption requests.  Defendants terminated each of the Plaintiffs' employment based solely on Plaintiffs refusal to take the Covid-19 vaccine. However, only a couple of months after terminating Plaintiffs, Defendants reversed part of their Vaccine Mandate regarding testing, demonstrating that the terminations of Plaintiffs were either unnecessary or a pretext.

2.       Based on Defendants' implementation of the Vaccine Mandate and their refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3.     Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.     This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.     This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6.     This Court has personal jurisdiction over Defendant Mayo Foundation as it is a non-profit corporation operating in and located in the State of Minnesota.

7.     This Court has personal jurisdiction over Defendant Mayo Arizona as it is a non-profit corporation operating in and located in the State of Arizona.

8.     This Court has personal jurisdiction over Defendant Mayo Eau Claire as it is a non-stock corporation operating in and located in the State of Wisconsin.

9.     Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.     Defendant Mayo Foundation is subject to the provisions of Title VII and the ADA because Defendant Mayo Foundation employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

11.     Defendant Mayo Arizona is subject to the provisions of Title VII and the ADA because Defendant Mayo Arizona employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

12.     Defendant Mayo Eau Claire is subject to the provisions of Title VII and the ADA because Defendant Mayo Arizona employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

13.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and each Defendant conducts business in the State of Minnesota.

## PARTIES

14.     Plaintiff Howell is an Arizona resident who worked for Defendant Mayo Arizona as a registered nurse in orthopedic surgery.  Plaintiff Howell worked for Defendant Mayo Arizona for over 10 years.

15.     Plaintiff Overton is a Dodge County, Minnesota resident who worked for Defendant Mayo as a registered nurse.  Plaintiff Overton worked for Defendant Mayo for 38 years.

16.     Plaintiff Stehr is a Montana resident who worked for Defendant Mayo as a registered nurse performing admissions and transfer duties.  Plaintiff Stehr worked for Defendant Mayo for approximately 10 years.

17.     Plaintiff Kraushaar is a Mower County, Minnesota resident who worked for Defendant Mayo as an LPN. She worked for Defendant Mayo for 14 years.

18.     Plaintiff Magle is an Olmsted County, Minnesota resident who worked for Defendant Mayo Foundation as a research protocol specialist.

19.     Plaintiff Van Natta is a Wisconsin resident who worked for Defendant Mayo as a registered nurse.

20.     Plaintiff Gingras is a Wisconsin resident who worked for Defendant Mayo Eau Claire as a radiologic technologist.  She worked for Defendant Mayo Eau Claire for over 20 years.

21.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

22.     Defendant Mayo Foundation is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

23.     Defendant Mayo Arizona is an Arizona non-profit corporation which operates medical facilities in Arizona.

24.     Defendant Mayo Eau Claire is a Wisconsin non-stock corporation which operates medical facilities in Wisconsin.

**FACTS**

25.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendants.

26.     Defendants recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.  On September 28, 2021 the President and CEO of Defendant Mayo (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Defendant's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day*."

27.     However, just two weeks later, Defendants implemented their Vaccine Mandate for Defendants' employees.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

28.    Defendants announced their Vaccine Mandate on October 13, 2021. Defendants' Vaccine Mandate required all staff to become vaccinated against Covid-19, and that if such staff were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

29.    On October 25, 2021, Defendants sent a communication to their employees outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on December 3, 2021, Defendants issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

30.    Defendants announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

31.    However, what Defendants gave with one hand, they took away with the other by proclaiming that "*it is anticipated that a small number of staff will have a qualifying religious exemption*."  (emphasis added)  Defendants further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant does not demonstrate a sincerely held religious belief*, (emphasis added). Further, Defendants declared: "*[o]nly a small number of staff are expected to qualify for a religious exemption*." (emphasis added).

32.    Defendants thus put themselves in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

33.     Defendants also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for Covid-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*."  Other medical conditions were preemptively discounted or disregarded.

34.     The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendants wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly*." (emphasis added).

35.     Consistent with Defendant Mayo Arizona's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Howell requested a religious exemption from Defendant Mayo Arizona, which Defendant Mayo Arizona denied.  Plaintiff Howell also submitted a request for reconsideration from Defendant Mayo Arizona of its denial of the request for Plaintiff Howell's religious exemption.  Defendant Mayo Arizona denied Plaintiff Howell's request for reconsideration.  Defendant Mayo Arizona did not provide Plaintiff Howell with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo Arizona provide specific information regarding the reasons for the denial of Plaintiff Howell's request for reconsideration.

36.     Plaintiff Howell is a Christian and believes that taking the Covid-19 vaccine would violate her religious beliefs.  Plaintiff Howell is a believer in Jesus Christ,

Lord and Savior, believes the tenets of Holy Scripture that her body is a Temple of the Holy Spirit and that to put the vaccine into her body, which is made in the image and likeness of God and has its own immunity system, would be a sin.

37.   Plaintiff Howell received positive job performance reviews from Defendant Mayo Arizona including that she was an "excellent" nurse, is "great to work with," and "makes the workload so much more manageable."

38.   Plaintiff Howell was 51 years old at the time of her termination and had worked for Mayo for over 10 years.  A younger co-worker's religious exemption was granted, and it appears that Plaintiff Howell's position was filled with a nurse with far less experience.

39.   Co-workers and superiors of hers employed with Defendant Mayo Arizona pressured Plaintiff Howell to disclose her vaccination status.

40.   Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Overton requested a religious exemption from Defendant Mayo, which Defendant Mayo denied. Plaintiff Overton also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Overton's request for reconsideration.  Defendant Mayo did not provide Plaintiff Overton with the criteria it used in evaluating his request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Overton's request for a religious exemption.

41.     Plaintiff Overton is a Catholic who believes her body is a Temple of the Holy Spirit. She believes God gave her conscience to choose how to care for her body. It would violate her conscience to take the vaccine.  Plaintiff Overton is also Pro-Life and believes in the sanctity of human life, including that of unborn humans.  Since the available Covid-19 vaccines were produced with or tested with cells from aborted babies, she cannot, consistent with her religious beliefs or conscience, allow the Covid-19 vaccine into her body as it would make Plaintiff Overton complicit in the abortion of babies.

42.     Plaintiff Overton received positive job performance reviews from Defendant Mayo, including that she is a "valuable teammate," a "great resource," and is one of the best and well-rounded nurses."

43.     Plaintiff Overton contracted Covid-19 and recovered prior to her termination thereby providing her with natural immunity to Covid-19.

44.     Though Plaintiff Overton's religious exemption was denied and she was terminated at age 55, younger co-workers' religious exemptions were granted.

45.     Plaintiff Overton is familiar with patients and others who have received the vaccine and then become ill, including a young, male patient who developed myocarditis, a work friend who developed tinnitus, and one person who had a stroke.

46.     Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Stehr requested a religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Stehr also submitted a request for reconsideration from Defendant Mayo of its denial of

the request for a religious exemption.  Defendant Mayo denied Plaintiff Stehr's attempt to request reconsideration of the denial.  Defendant Mayo did not provide Plaintiff Stehr with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Stehr's request for a religious exemption.

47.    Plaintiff Stehr is a Christian who made her decision not to take the Covid-19 vaccine based on her interpretation of Christian Scripture.  Plaintiff Stehr's religious beliefs provide that she believes in the sanctity of human life, including that of unborn babies, and her religious beliefs provide that the use of cells of unborn babies for any purpose violate her religious beliefs.  The available Covid-19 vaccines were produced with or tested with cells from aborted babies.  Based on Plaintiff Stehr's religious beliefs, Plaintiff Overton religious beliefs provide that she would be complicit in the abortion of babies if she were to take the Covid-19 vaccine.  Based on prayer and her study of Scripture God has instructed Plaintiff Stehr not to take the Covid-19 vaccine.

48.    Although Plaintiff Stehr's religious exemption from taking the Covid-19 vaccine was denied, Plaintiff Stehr had previously requested a religious exemption from Defendant Mayo to taking the influenza vaccine.  Defendant Mayo granted Plaintiff Stehr's request for a religious exemption from taking the influenza vaccine.  Further, Defendant Mayo granted a number of religious exemptions to the Covid-19 vaccine younger and lower paid staff similarly situated to Plaintiff submitted to Defendant Mayo while Defendant Mayo denied Plaintiff Stehr's request for a religious exemption to taking the Covid-19 vaccine.

11

49.     Plaintiff Stehr received positive job performance reviews from Defendant Mayo, including that "[Plaintiff] Jennifer [Stehr] is a great asset …".

50.     During the Covid-19 pandemic, Defendant Mayo had Plaintiff Stehr work 100% remotely and not face to face with patients or other Defendant Mayo employees. In fact, Plaintiff Stehr had no contact with either patients or other Defendant Mayo employees.

51.     Plaintiff Stehr is familiar with patients and other people who suffered illnesses shortly after receiving the Covid-19 vaccine.  Some of those people suffered from blood clots, some from cardiac issues, and some had unusual masses or growths.

52.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Kraushaar requested a religious exemption from Defendant Mayo, which Defendant Mayo granted but required weekly testing.  Plaintiff Kraushaar also submitted a request for an exemption from the testing, and Defendant Mayo denied that request for a religious exemption.  Defendant Mayo denied Plaintiff Kraushaar's request for reconsideration.  Defendant Mayo did not provide Plaintiff Kraushaar with the criteria it used in evaluating her request for a religious exemption from testing, nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Kraushaar's request for a religious exemption from testing.

53.     Plaintiff Kraushaar is a Christian who believes her body is a Temple of the Holy Spirit.  Plaintiff Kraushaar's religious beliefs provide that she believes in the sanctity of human life, including that of unborn babies, and her religious beliefs provide

12

that the use of cells of unborn babies for any purpose violate her religious beliefs. The available Covid-19 vaccines were produced with or tested with cells from aborted babies. Based on Plaintiff Kraushaar's religious beliefs, Plaintiff Kraushaar's religious beliefs provide that she would be complicit in the abortion of babies if she were to take the Covid-19 vaccine. Based on prayer and her study of Scripture God has instructed Plaintiff Kraushaar not to take the Covid-19 vaccine.

54.     Plaintiff Kraushaar contracted Covid-19 prior to her termination from Defendant Mayo and has recovered meaning that she has natural immunity.

55.     Plaintiff Kraushaar saw patients, including a disproportional number who had received the vaccine and then began experiencing blood clots and other ailments shortly after receiving the vaccine.

56.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Magle requested a religious exemption from Defendant Mayo Foundation, which Defendant Mayo Foundation denied. Plaintiff Magle also submitted a request for reconsideration, which Defendant Mayo Foundation denied. Defendant Mayo did not provide Plaintiff Magle with the criteria it used in evaluating her request for a religious exemption from testing, nor did Defendant Mayo Foundation provide specific information regarding the reasons for the denial of Plaintiff Magle's request for a religious exemption from testing.

57.     Plaintiff Magle is a Christian who believes, based on her interpretation of Scripture, that her body is a Temple of the Holy Spirit and it would violate her conscience to take the vaccine. She believes in the sanctity of each life including unborn

13

humans, and it would violate her conscience to take a vaccine produced with or tested with cells from aborted babies.

58.     Plaintiff Magle is a Christian who believes, based on her interpretation of Christian Scripture, that her body is a Temple of the Holy Spirit and it would violate her religious conscience to take the Covid-19 vaccine.  Plaintiff Magle's religious beliefs provide that she believes in the sanctity of human life, including that of unborn babies, and her religious beliefs provide that the use of cells of unborn babies for any purpose violate her religious beliefs.  The available Covid-19 vaccines were produced with or tested with cells from aborted babies.  Based on Plaintiff Magle's religious beliefs, Plaintiff Magle's religious beliefs provide that she would be complicit in the abortion of babies if she were to take the Covid-19 vaccine.  Based on prayer and her study of Scripture God has instructed Plaintiff Magle not to take the Covid-19 vaccine.

59.     Defendant Mayo had Plaintiff Magle work remotely since March 2020.  As a result, Plaintiff Magle had no contact with either Defendant Mayo Foundation's patients or other employees.  In conjunction with her request from Defendant Mayo foundation for a religious exemption to taking the Covid-19 vaccine, Plaintiff Magle requested that Defendant Mayo Foundation accommodate her request by simply allowing her to continue to work remotely.  Defendant Mayo Foundation refused this request and terminated her.

60.     Plaintiff Magle contracted Covid-19 prior to her termination and she recovered thereby providing her with natural immunity to Covid-19.

61.     Plaintiff Magle was 53 years old at the time of her termination and believes that Defendant Mayo Foundation terminated her, as well as other more experienced and more highly paid employees in order to cut costs because Defendant Mayo Foundation's elective surgery practice was greatly reduced during the Covid-19 pandemic.

62.     Plaintiff Magle is familiar with people who have suffered illness shortly after receiving the Covid-19 vaccine, including one who suffered small strokes, one who had open heart surgery, and even one young person who died shortly after receiving a booster shot.

63.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Van Natta requested a religious exemption from Defendant Mayo, which Defendant Mayo denied.  Plaintiff Van Natta also submitted a request for reconsideration, and Defendant Mayo denied that request for a reconsideration.  Defendant Mayo did not provide Plaintiff Van Natta with the criteria it used in evaluating her request for a religious exemption from testing, nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Van Natta's request for a religious exemption from testing.

64.     Plaintiff Van Natta is a Christian who believes in the teachings of Jesus Christ, her Lord and Savior, and the Holy Bible.  Plaintiff Van Natta's religious beliefs provide that she believes in the sanctity of human life, including that of unborn babies, and her religious beliefs provide that the use of cells of unborn babies for any purpose violate her religious beliefs.  The available Covid-19 vaccines were produced with or tested with cells from aborted babies.  Based on Plaintiff Van Natta's religious beliefs,

Plaintiff Van Natta's religious beliefs provide that she would be complicit in the abortion of babies if she were to take the Covid-19 vaccine. Based on prayer and her study of Scripture God has instructed Plaintiff Van Natta not to take the Covid-19 vaccine.

65.     Plaintiff Van Natta received positive job performance reviews, including that she is "an expert resource for staff and providers alike," and "she does great work."

66.     Consistent with Defendant Mayo Eau Claire's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Gingras requested a religious exemption from Defendant Mayo Eau Claire, which Defendant Mayo Eau Claire denied. Plaintiff Gingras also submitted a request for reconsideration, and Defendant Mayo Eau Claire denied that request for reconsideration also. Defendant Mayo Eau Claire did not provide Plaintiff Gingras with the criteria it used in evaluating her request for a religious exemption from testing, nor did Defendant Mayo Eau Claire provide specific information regarding the reasons for the denial of Plaintiff Gingras's request for a religious exemption from testing.

67.     Plaintiff Gingras is a Christian. Plaintiff Gingras' religious beliefs provide that life in any form is precious to God our Creator. To receive a Covid-19 vaccine, when the available vaccines were produced with or tested with cells from aborted babies, violates Plaintiff Gingras' conscience and religious beliefs because it makes her a party to the abortion. Plaintiff Gingras also believes that her body is a Temple of the Holy Spirit and receiving the vaccine would be a sinful alteration of God's Temple. Plaintiff Gingras prayed and discerned for God's will and wisdom, and God made it clear to Plaintiff Gingras not to take the Covid-19 vaccine.

16

68.     Plaintiff Gingras tested positive for Covid-19 prior to Defendant Mayo Eau Claire terminating her employment.  Plaintiff Gingras recovered from Covid-19 prior to Defendant Mayo Eau Claire terminating her employment.  As a result, Plaintiff Gingras had natural immunity to Covid-19 prior to Defendant Mayo Eau Claire terminating her employment meaning that Defendant Mayo Eau Claire did not have a legitimate business reason to require her to take the Covid-19 vaccine.

69.     Plaintiff Gingras received positive job performance reviews from Defendant Eau Claire.

70.     After Defendants had told Plaintiffs that Defendants had denied their requests for religious exemptions and requests for reconsideration, Defendants also instructed the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification*."

71.     Defendant Mayo Arizona terminated Plaintiff Howell on January 3, 2022.  Plaintiff Howell filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Howell a Right to Sue letter dated April 4, 2022.

72.     Defendant Mayo terminated Plaintiff Overton on March 25, 2022.  Plaintiff Overton filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Overton a Right to Sue letter dated April 4, 2022.

73.     Defendant Mayo terminated Plaintiff Stehr on January 3, 2022.  Plaintiff Stehr filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Stehr a Right to Sue letter dated April 4, 2022.

74.     Defendant Mayo terminated Plaintiff Kraushaar on January 3, 2022.
Plaintiff Kraushaar filed a charge of discrimination with the EEOC, and the EEOC issued
Plaintiff Kraushaar a Right to Sue letter dated April 6, 2022.

75.     Defendant Mayo Foundation terminated Plaintiff Magle on January 3,
2022.  Plaintiff Magle filed a charge of discrimination with the EEOC, and the EEOC
issued Plaintiff Magle a Right to Sue letter dated April 6, 2022.

76.     Defendant Mayo terminated Plaintiff Van Natta on January 3, 2022.
Plaintiff Van Natta filed a charge of discrimination with the EEOC, and the EEOC issued
Plaintiff Van Natta a Right to Sue letter dated April 6, 2022.

77.     Defendant Mayo Eau Claire terminated Plaintiff Gingras on January 3,
2022.  Plaintiff Gingras filed a charge of discrimination with the EEOC, and the EEOC
issued Plaintiff Gingras a Right to Sue letter dated April 7, 2022.

78.     Defendants created an ad hoc panel to review exemption requests for taking
the Covid-19 vaccine. As noted above, each of the Plaintiffs submitted requests for an
exemption, but Defendants denied nearly every request for religious exemption, with the
exception that some were granted, but conditioned upon submission to invasive,
supervised weekly testing.

79.     As a result of Defendants' policy on restricting religious and medical
exemptions, very few people qualified for those exemptions, resulting in mass
terminations for those, including each of the Plaintiffs, who all refused to be injected with
the Covid-19 vaccine and whom Defendants terminated as a result.

80.    In issuing the denials for requests for a religious exemption from taking the Covid-19 vaccine, Defendants sent such employees, including Plaintiffs, the same boilerplate language:

> "*Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation*."

81.    Defendants conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendants' processes for evaluating religious exemptions requests from employees seeking a religious exemptions to taking the Covid-19 vaccine, Defendants wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision."  Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs', religious beliefs, or attempt any reasonable accommodation, Defendants sent its employees more boilerplate language to justify its pre-determined result:

> "*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the Covid-19 vaccine*."

82.     Defendants actually specifically disavowed an individual interactive process for evaluating requests for a religious exemption to taking the Covid-19 vaccine writing: "Specific feedback on individual requests will not be provided, it is not possible to provide individual feedback."

83.     Plaintiffs sought further clarification of Defendants' criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendants determining that each of the Plaintiffs did not have a "sincerely held religious belief." However, Defendants refused to respond to these individual requests for clarification and rather simply sent each of the Plaintiffs the identical generalized language in Defendants' letters.

84.     In their form denial letters, Defendants announced that they would accept appeals of their uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*." Each of the Plaintiffs took advantage of that process and submitted additional information to Defendants.

85.     Following each of the Plaintiffs' requests for reconsideration of their requests for a religious exemption to taking the Covid-19 vaccine, Defendants again issued identical denial letters to each of the Plaintiffs and nearly every employee who appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine. Defendants' transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a*

*religious accommodation*."  Again, Defendants engaged in no interactive process to evaluate the requests for religious exemptions.

86.    Defendants did not provide information to its employees, including each of the Plaintiffs, about how Defendants determined whether the religious beliefs of those employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

87.    Defendants' original denial of each of the Plaintiffs' requests for a religious exemption and Defendants' denial of each of the Plaintiffs' requests for reconsideration of the denial of their requests for a religious exemption to taking the Covid-19 vaccine contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification*."

88.    Defendants further instructed its employees to *"endorse the vaccine or say nothing."*

89.    Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendants' *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendants made no effort to accommodate their requests for a religious exemption. Further, Defendants never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate.

90.    Defendants, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated"

has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

91.     Defendants issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

92.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

93.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

94.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendants have done as set forth above.

95.     Early on in the Covid-19 pandemic, and before any vaccines were available, Defendants provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

96.     Rather than disclosing the results of its determination on the numbers of Defendants' "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendants have not made public this information and instead simply issued its Vaccine Mandate.

97.     On March 8, 2022, Defendants announced it would suspend the testing program portion of its Vaccine Mandate.  As a result, Defendants' remaining unvaccinated employees are now treated similarly to vaccinated employees.

98.     After terminating each of the Plaintiffs, Defendants suspended weekly testing effective March 14, 2022.  This means that employees who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 8, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendants have now determined was unnecessary.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

99.     Plaintiffs restate and reallege paragraphs 1 through 98 as if fully set-forth herein.

100.    Each Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

101.    Each of the Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

102.    Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

103.    Each Plaintiff informed his or her respective employer Defendant of the conflict between their religious beliefs and taking the Vaccine Mandate.

104.    Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

105.    The Act prohibits Defendants from scrutinizing what the Defendants believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

106.    Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

107.    In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendants and their ad hoc panel applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions

granted were frequently those of employees with less seniority and therefore at a lower wage.

108.    Despite the Plaintiffs' consistent requests for Defendants to engage in an interactive process regarding their requests for accommodation, Defendants refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests for an exemption for identical reasons as other of the Defendants' employees using an identical form letter.

109.    As set forth above, Defendants could have accommodated Plaintiffs' requests for a religious exemption without suffering any undue hardship by having them continue to do their job the same as they had done for the last one and one-half years of their employment.

110.    Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

111.    Because of Defendants' unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA §363A.08
### (Plaintiffs Overton, Stehr, Kraushaar, Magle and Van Natta)

112.    Plaintiffs restate and reallege paragraphs 1 through 111 as if fully set-forth herein.

113.    Minn. Stat. §363A.01, et seq. prohibits discrimination in employment based on religion.

114.    Defendants Mayo and Mayo Foundation ("Minnesota Defendants") are "employers" within the meaning of Minn. Stat. §363A.01.

115.    Plaintiffs Overton, Stehr, Kraushaar, Magle and Van Natta ("Minnesota Plaintiffs") are "employees" within the meaning of Minn. Stat. §363A.01.

116.    The Minnesota Plaintiffs have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine.

117.    The Minnesota Plaintiffs informed their respective Minnesota Defendants employers of the conflict between their religious beliefs and the Vaccine Mandate.

118.    Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

119.    Minn. Stat. §363A.01 et seq. prohibits the Minnesota Defendants from scrutinizing what it believes to be the sincerity of the Minnesota Plaintiffs' religious beliefs, or whether the Minnesota Plaintiffs' exercise of their beliefs is logical or as consistent as the Minnesota Defendants believe the exercise of those religious beliefs should be.

120.    In response to the Minnesota Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, the Minnesota Defendants' *ad hoc* panels applied a uniform, blanket rule in rejecting nearly all, in violation of the law

on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

121.    Despite the Minnesota Plaintiffs' requests for their respective Minnesota Defendants employer to engage in dialogue regarding their respective requests for a religious exemption, each of the respective Minnesota Defendants refused throughout to engage in the interactive process, and instead the Minnesota Defendants terminated each of these Minnesota Plaintiffs for generalized reasons, using identical form letters.

122.    The Minnesota Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. §363A.01 et seq.

123.    Because of the Minnesota Defendants' unlawful actions, the Minnesota Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

124.    Plaintiffs restate and reallege paragraphs 1 through 123 as if fully set-forth herein.

125.    Each Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5)(A).

126.    Each of the Plaintiffs was an "employee" of their respective Defendant employer within the meaning of 42 U.S.C. §12111(4).

127.    The ADA, at 42 U.S.C. §12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

128.    Defendants' Vaccine Mandate violated 42 U.S.C. §12112 (d)(4)(a).

129.    As a result of Defendants' actions in violation of the ADA, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute
### (Plaintiffs Overton, Stehr, Kraushaar, Magle and Van Natta)

130.    Plaintiffs restate and reallege paragraphs 1 through 129 as if fully set-forth herein.

131.    Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id*. §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… *individuals* have a f*undamental right* to *refuse* medical treatment, testing, physical or mental examination, *vaccination*, participation in experimental procedures and protocols, …".  *Minn. Stat. §12.39, Subd. 1* (emphasis added).

> Further, "before performing … vaccination of an individual … a *health care provider* shall *notify the individual* of the *right to refuse* the … *vaccination, ….*".  *Minn. Stat. §12.39, Subd. 2 (*emphasis added*)*.

28

132.     The Minnesota Plaintiffs are "individuals" who have a "fundamental right"
to "refuse medical treatment" and "vaccinations."

133.     Each Minnesota Defendant is a "health care provider" (*Minn. Stat. §12.39,
Subd. 2*), who is obligated to "notify the individual of the right to refuse vaccinations."
Further, the underlying policy applies to "private agencies of every type" (*Minn. Stat.
§12.02, Subd. 2*).

134.     The State of Minnesota is no longer under a state-declared "emergency," as
Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

135.     The Minnesota Plaintiffs have objected to being required to undergo
compulsory medical treatment, including invasive injections, vaccinations, and testing.
This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in
conduct contrary to Minnesota Public Policy. As a result of the Minnesota Plaintiffs'
refusal to accede to the Minnesota Defendants' Vaccine Mandate, the Minnesota
Plaintiffs have been harassed, suspended, discharged (explicitly or constructively), and
had their earned benefits taken away.

136.     The Minnesota Defendants' actions in punishing the Minnesota Plaintiffs
for refusing to engage in conduct prohibited by state law and public policy constitutes
wrongful discharge. The Minnesota Defendants admitted in 2021 that Covid-19
vaccinations could not be mandatory and must instead be voluntary.

29

137.    The Minnesota Defendants partially changed their policy in October, 2021. Subsequently, in March, 2022, the Minnesota Defendants changed their Vaccine Mandate again to no longer require weekly testing for unvaccinated employees.

138.    As a result of the Minnesota Defendants' illegal actions taken against the Minnesota Plaintiffs, the Minnesota Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

139.    Plaintiffs restate and reallege paragraphs 1 through 138 above as if fully set-forth herein.

140.    Defendants had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

141.    Defendants wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

142.     Defendants' policies and statements created a contract between it and its employees.

143.    Each of the Defendants' actions in terminating the respective Plaintiff who worked for one of the Defendants, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

144.    Plaintiffs have been damaged by Defendants' breach of contract.

145.    In the alternative, Defendants' promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to their detriment. Defendants' promises to its employees, including Plaintiffs, should be enforced to avoid injustice.

## SIXTH CAUSE OF ACTION

### State law religious discrimination claim under Arizona Revised Statutes §41-1463 (Plaintiff Howell)

146.    Plaintiffs restate and reallege paragraphs 1 through 145 above as if fully set-forth herein.

147.    Ariz. Rev. Stat. §41-1463, et seq. prohibits discrimination in employment based on religion.

148.    Defendant Mayo Arizona is an "employer" within the meaning of Ariz. Rev. Stat. §41-1463.

149.    Plaintiff Howell is an "employee" within the meaning of Ariz. Rev. Stat. §41-1463.

150.    Plaintiff Howell has a sincerely held religious belief which prevented Plaintiff Howell from receiving the Covid-19 vaccine.

151.    Plaintiff Howell informed Defendant Mayo Arizona of the conflict between Plaintiff Howell's religious beliefs and the Vaccine Mandate.

152.    Ariz. Rev. Stat. §41-1463 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

153.    Ariz. Rev. Stat. §41-1463 et seq. prohibits Defendant Mayo Arizona from scrutinizing what it believes to be the sincerity of Plaintiff Howells' religious beliefs, or whether Plaintiff Howells' exercise of Plaintiff Howell's religious beliefs is logical or as consistent as Defendant Mayo Arizona believes the exercise of those religious beliefs should be.

154.    In response to Plaintiff Howell's requests for reasonable accommodation of Plaintiff Howell's sincerely-held religious beliefs, Defendant Mayo Arizona's *ad hoc* panels applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

155.    Despite Plaintiff Howell's requests for Defendant Mayo Arizona to engage in dialogue regarding Plaintiff Howell's request for a religious exemption, Defendant Mayo Arizona refused throughout to engage in the interactive process, and instead the Defendant Mayo Arizona terminated Plaintiff Howell for generalized reasons using identical form letters as used for other of Defendants' employees.

156.    Defendant Mayo Arizona's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Ariz. Rev. Stat. §41-1463 et seq.

157.    Because of Defendant Mayo Arizona's unlawful actions, Plaintiff Howell

has suffered and continues to suffer economic and other damages in amounts to be

proven at trial, including front pay, back pay, emotional distress damages, compensatory

damages, punitive damages, and attorney fees in excess of $75,000.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a

right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and

against Defendants for an Order of the Court as follows:

1.    Adjudging that Defendants are liable to each of their respective employee

Plaintiffs for their actual damages in an amount to be proven at trial, including front pay,

back pay, treble damages and statutory penalty, interest, emotional distress and pain and

suffering, compensatory damages, punitive damages, and any damages or penalties

available at law;

2.    Enjoining Defendants from taking further illegal action against each of the

Plaintiffs in violation of both state and federal law, and Ordering each Defendant to take

action to restore each of their respective employee Plaintiffs to their positions they would

have enjoyed absent Defendants' illegal conduct;

3.    Awarding each of the Plaintiffs their costs, reasonable attorney fees,

prejudgment interest, and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not heave a scientific basis.

Dated: July 5, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
William F. Mohrman, 168816
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
Email: mohrmanr@mklaw.com
*Attorneys for Plaintiffs*